UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **KEVIN MICHAEL TREVINO** | **CIVIL DOCKET NO. 6:24-CV-01246** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **WASTE MANAGEMENT OF LOUISIANA, LLC** | **MAGISTRATE JUDGE DAVID J. AYO** |

## MEMORANDUM RULING

Before the Court is a MOTION FOR SUMMARY JUDGMENT (the "Motion") filed by Defendant Waste Management of Louisiana, LLC (hereinafter, "Defendant"). [Doc. 17]. Plaintiff Kevin Trevino (hereinafter, "Plaintiff") filed an Opposition on December 11, 2025, to which Defendant filed a Reply on December 22, 2025. [Docs. 22, 27]. For the following reasons, the Motion is GRANTED IN PART and DENIED IN PART.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This lawsuit arises from Defendant terminating the employment of Plaintiff Kevin Trevino on August 5, 2022. [Doc. 1]. Plaintiff worked at the Defendant's Harvey, Louisiana, facility from March 2017 until his termination, where he was a union employee covered by a collective bargaining agreement. [Doc. 22-2]; [Doc. 22-3]. At all relevant times, Plaintiff held the position of Container Technician – a job in which he routinely performed at least some welding. [Doc. 17-2, p. 4].

In April 2022, Plaintiff received a conditional job offer from another company, contingent upon passing a physical examination. [*Id.*, pp. 47–49, 165–67]. This examination revealed a heart murmur, leading to a medical hold. [*Id.*, pp. 167–68].

Plaintiff subsequently requested and was granted medical leave by Defendant to have a pacemaker installed, with the condition that Plaintiff provide a doctor's note stating when he could return to work. [*Id.*, pp. 13–14]. Plaintiff underwent the pacemaker procedure on May 26, 2022, after which he notified his supervisor that, because of the pacemaker, he could no longer weld or work on trucks. [*Id.*, pp. 16, 22]. Plaintiff then inquired about an alternative role as a diesel technician. [*Id.*, p. 22].

On July 6, 2022, Plaintiff emailed Austin Horne (hereinafter, "Horne"), an HR representative of Defendant, stating that he was ready to return to work. [*Id.*, p. 74]. In that communication, Plaintiff provided a note from his cardiologist clearing him for work and attached a document, "Your Guide to Understanding Pacemakers," underlining a section warning against exposure to high-voltage machinery, arc welders, and large running gasoline motors. [*Id.*, pp. 75–76]. Two days later, in response to Plaintiff's discussion about returning, Horne requested additional information on Plaintiff's specific medical restrictions. [*Id.*, p. 108]. Plaintiff then supplied further documentation cautioning against proximity to welding, running gasoline engines, jumper cables, and power tools. [*Id.*, pp. 156–60].

Defendant contends it attempted to accommodate Plaintiff by searching for a technician or technician assistant position restricted to diesel engines but found no vacant positions for which Plaintiff was qualified. [Doc. 17-3, pp. 40–41]. Defendant asserts that, as a result, it was compelled to terminate Plaintiff's employment on August 5, 2022. [Doc. 22-7].

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on November 4, 2022, and alleged that Defendant terminated him in

violation of the Americans with Disabilities Act ("ADA"). [Doc. 17-2, p. 170]. Plaintiff asserts that he received a Notice of Right to Sue letter from the EEOC on June 14, 2024.[1] [Doc. 1, ¶ 4]. Plaintiff then filed suit in this Court on September 10, 2024, and alleged: (i) disability discrimination in violation of the Louisiana Employment Discrimination Law ("LEDL") and the ADA; (ii) retaliation in violation of the ADA; (iii) failure to accommodate in violation of the LEDL; and (iv) interference and retaliation under the Family Medical and Leave Act ("FMLA"). [Doc. 1, ¶¶ 28–63].

Defendant filed the instant Motion on November 5, 2025, arguing that: (i) Plaintiff's LEDL claims are prescribed; (ii) Plaintiff cannot prove his ADA claims; and (iii) Plaintiff's FMLA claims are time-barred. [Doc. 17]. In his Opposition, Plaintiff chose to withdraw his LEDL claims and his FMLA interference claim, but not his FMLA retaliation claim.[2] [Doc. 22]. As to his ADA claims, Plaintiff argued that genuine disputes of material fact exist such that a reasonable jury could return a verdict in favor of the Plaintiff. [*Id.*]. All issues having been briefed by the parties, the Motion is ripe for ruling.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show[] that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). A genuine

---

[1] Although Plaintiff has not provided this Court with a copy of the Notice of Right to Sue letter, Defendant does not challenge this letter's existence. *See* [Doc., 17-1, p. 13].

[2] Because Plaintiff withdrew his LEDL and FMLA interference claims, this Court will not address them.

dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson,* 477 U.S. 242.

The movant bears the burden of demonstrating the absence of a genuine dispute of material fact but need not negate every element of the nonmovant's claim. *Hongo v. Goodwin*, 781 F. App'x 357, 359 (5th Cir. 2019), *citing Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). If the movant meets this burden, the burden then shifts to the nonmovant who is required to "identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). However, summary judgment cannot be defeated through "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017), *quoting Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see also Anderson*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). The motion for summary judgment should be granted if the non-moving party cannot produce sufficient competent evidence to support an essential element of its claim.

*Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005). However, when the relevant facts are undisputed, the court "need only decide whether those undisputed facts ... entitle the movant to judgment as a matter of law." *Flowers v. Deutsche Bank Nat'l Tr. Co.*, 614 F. App'x 214, 215 (5th Cir. 2015).

## LAW AND ANALYSIS

### I. ADA Discrimination

First, Plaintiff alleges that he was discriminated against based upon his alleged disability – his heart condition – in violation of the ADA.[3] In its Motion, Defendant argues that Plaintiff is not disabled within the meaning of the ADA because he has not pled or otherwise identified any major life activity that is substantially limited by his purported disability. [Doc. 17-1, pp. 16–17]. In addition, Defendant argues that Plaintiff is not disabled because he can still work a broad class of jobs. [*Id.*, pp. 17–18]. Plaintiff responds that his heart condition does constitute an actual disability under the ADA and that Defendant is relying on case law decided prior to the Americans with Disabilities Act Amendments Act ("ADAAA") when interpreting the "broad class of jobs" issue. [Doc. 22, pp. 6–9].

Alternatively, Defendant contends that Plaintiff was unqualified for the Container Technician role due to his welding restrictions, while Plaintiff argues that the issue of whether welding was an essential function of the job presents a genuine dispute of material fact and is a question for the jury. [Doc.17-1, pp. 18–21]; [Doc. 22,

---

[3] As Defendant notes, Plaintiff did not plead a failure-to-accommodate claim under the ADA. *See generally* [Doc. 1, ¶¶ 36–45]; [Doc. 17-1, p. 20]. Although Plaintiff did plead a failure-to-accommodate claim under the LEDL, Plaintiff withdrew his LEDL claims. [Doc. 22, p. 16]. Thus, the Court will constrain its analysis to Plaintiff's claim of disability discrimination.

pp. 9–12]. Plaintiff further argues that if welding was not an essential duty, then omitting it would have been a reasonable accommodation. [Doc. 22, pp. 9–12].

Thus, according to Plaintiff, the legitimacy of Defendant's non-discriminatory reason – that there was no vacant position for which Plaintiff was qualified – turns on whether welding was essential to Plaintiff's role and if Plaintiff remained qualified despite his medical restrictions. [*Id.*, pp. 13–14]. If a jury concludes welding was not essential, then Plaintiff could be viewed as qualified, and the ADA may prohibit Plaintiff's termination on that basis. [*Id.*].

### A. *Prima Facie* Case

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). ADA discrimination claims without direct evidence are governed under the *McDonnell Douglas* burden-shifting framework.[4] *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279–80 (5th Cir. 2000).

Under this framework, a plaintiff makes a *prima facie* showing of discrimination by establishing that he: (i) is disabled or regarded as disabled; (ii) is qualified for the job; and (iii) was subject to an adverse employment action on account of his disability. *Cannon v. Jacobs Field Servs. N. Am., Inc.,* 813 F.3d 586, 590 (5th Cir. 2016). Once this *prima facie* showing is made, "the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." *McInnis*, 207 F.3d at 280. And "[o]nce the employer

---

[4] "Direct evidence is evidence which, if believed, proves the fact of intentional discrimination without inference or presumption." *Brown v. E. Miss. Elec. Power Ass'n,* 989 F.2d 858, 861 (5th Cir. 1993).

articulates such a reason, the burden then shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination." *Id., citing Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995).

The parties do not dispute the third element of a *prima facie* case of discrimination because Plaintiff was terminated from his position. *See generally* [Doc. 17-1]; [Doc. 22]; [Doc. 27]. Thus, this Court will only consider the first two *prima facie* elements, whether Plaintiff was disabled for ADA purposes and whether he was qualified for the Container Technician position.

**1. Disability[5]**

"A plaintiff satisfies the actual disability standard [of the ADA] by showing []he has 'a physical or mental impairment that substantially limits one or more major life activities.'" *Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 446 (5th Cir. 2018), *citing* 42 U.S.C. § 12102(1)(A). "Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, [and] walking." *Id., citing* 42 U.S.C. § 12102(2)(A).

And the EEOC in its implementing regulations defines one or more major life activities as including the normal operation of major bodily functions, such as the cardiovascular system. 29 C.F.R. § 1630.2(g)(1)(i), (h)(1), (i)(1)(ii). The EEOC regulations further state that the "substantially limits" standard is not to be

---

[5] The Court notes that Plaintiff's argument does not rest on a contention that the Defendant regarded him as disabled, but rather that his heart condition and subsequent pacemaker installation render him actually disabled for ADA purposes. *See generally* [Doc. 22].

construed as a demanding standard – requiring only comparisons to the general population rather than scientific analysis. *See Williams*, 717 F. App'x at 446, *citing* 29 C.F.R. § 1630.2(j)(1)(v); *see also* 29 C.F.R. § 1630.2(j)(1)(i).

In this case, Defendant concedes that Plaintiff has an impairment – hypertrophic cardiomyopathy – but instead argues that Plaintiff has not demonstrated a major life activity substantially limited by the condition and cannot support his position beyond his own affidavit. [Doc. 27, pp. 1–2]. The record, however, contains: (i) email exchanges between Plaintiff and Horne referencing Plaintiff's heart impairment; (ii) restrictions provided by Plaintiff's medical provider cautioning against proximity to welding equipment or gasoline engines; and (iii) a cardiologist's letter outlining the implanted pacemaker and associated restrictions. [Doc. 17-2, pp. 103–113, 156–160]. Together, and construing all facts in Plaintiff's favor, this provides sufficient evidence of Plaintiff's impairment in performing manual tasks or in the normal operation of his cardiovascular system for a reasonable jury to conclude that Plaintiff is disabled under the ADA.[6]

### 2. Qualifications

The Defendant next argues that Plaintiff was not qualified for the Container Technician position due to his inability to weld, which Defendant claims is an essential job function. [Doc. 17-1, pp. 18–21]. Plaintiff contests that welding was

---

[6] In fact, Defendant's termination letter itself refers to "permanent restrictions preventing [Plaintiff] from working near welding equipment," providing further support for Plaintiff's argument that his heart condition renders him actually disabled under the ADA. [Doc. 22-7].

required for the job and contends it is a factual issue that should be decided by the jury. [Doc. 22, pp. 9–12].

"To be a qualified employee, [a plaintiff] must be able to show that he could either (1) 'perform the essential functions of the job in spite of his disability,' or (2) that 'a reasonable accommodation of [his] disability would have enabled [him] to perform the essential functions of his job.'" *Cannon*, 813 F.3d at 592, *citing EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014). "A function is 'essential' if it bears 'more than a marginal relationship' to the employee's job." *Id., citing Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993).

In short, the law requires consideration of, among other things, the employer's judgment, written job descriptions, and terms of a collective bargaining agreement to determine essential functions.[7] *Credeur v. La. Off. of the Attorney Gen.*, 860 F.3d 785, 792 (5th Cir. 2017; 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n)(3)). Defendant points to its own perspective and deposition testimony, while Plaintiff relies on job

---

[7] Defendant relies upon *Credeur v. La. Off. of the Attorney Gen.*, 860 F.3d 785, 792 (5th Cir. 2017), for the proposition that the greatest weight is given to the employer's judgment in considering an essential job function. [Doc. 17-1, p. 20]. Although this is true, the *Credeur* Court also discussed other evidence that must be considered under statute, such as a written job description. *Credeur*, 860 F.3d at 792.

Specifically, the Fifth Circuit in *Credeur* looked to 42 U.S.C. § 12111(8), which provides that: "… consideration shall be given to the employer's judgment as to what functions of a job are essential, *and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.*" *Id.*; 42 U.S.C. § 12111(8) (emphasis added). Furthermore, both Plaintiff and the *Credeur* Court look to an EEOC regulation that states that a written job description prepared before advertising or interviewing applicants for the job, the amount of time spent on the job performing the function, and the terms of a collective bargaining agreement are all non-exhaustive factors that may guide the essential function inquiry. *Credeur*, 860 F.3d at 792; 29 C.F.R. § 1630.2(n)(3); [Doc. 22, p. 11].

descriptions and the collective bargaining agreement.  [Doc. 17-1, p. 20]; [Doc. 22-5, pp. 49–57].

Specifically, the written job description for the Container Technician position does not explicitly list welding as an essential function.  [Doc. 17-2, pp. 151–52].  In contrast, other roles within the company, such as the "Welder – Container" job description, specifically identifies welding as an essential duty.  [Doc. 17-2, pp. 154–55].  Likewise, the Defendant's collective bargaining agreement and pay rates differentiate the roles.  [Doc. 22-3, p. 9]; [Doc. 22-8].  Additionally, the Defendant's own termination letter states Plaintiff was terminated as a Container Technician, not a Welder.  [Doc. 22-7].  The record also contains deposition testimony acknowledging that the Container Technician job description does not contain a welding requirement.  [Doc. 22-5, pp. 49–57].  Based on this evidence, there are genuine factual disputes as to whether welding is essential to the Container Technician role.

### B. Defendant's Nonretaliatory Justification

Defendant claims its legitimate, non-discriminatory reason for terminating Plaintiff is that no vacant positions for which Plaintiff was qualified were available that also would have accommodated Plaintiff's pacemaker-related restrictions.  [Doc. 17-1, pp. 24–26].  Plaintiff responds that Defendant's justification depends on welding being an essential job function; if it is not, then Plaintiff could have remained in his role without welding.  [Doc. 22, pp. 13–14].  Plaintiff relies heavily on *Cannon*, 813 F.3d 586, to support his argument.  [*Id.*].

In *Cannon*, the plaintiff-employee's job offer was revoked because the defendant-employer believed that the plaintiff's shoulder injury prevented him from climbing ladders or driving company vehicles, which the defendant argued was an essential function of the position. 813 F.3d at 588–89. The *Cannon* Court found that genuine disputes of material fact existed as to whether the plaintiff was qualified for the position because there was conflicting summary judgment evidence regarding whether plaintiff could perform the position's essential functions. *Id.* at 592–93.

Similarly here, if a jury finds that Plaintiff cannot perform the essential functions of a Container Technician because of his heart condition, then Defendant "has offered a lawful reason for its decision."[8] *See id.* But if the jury instead finds that Plaintiff is disabled but still qualified to work as a Container Technician because welding is not an essential function, then Defendant's termination of Plaintiff because of his physical impairment "constitute[s] the discrimination that the ADA forbids." *See id.* At bottom, because there is evidence and testimony that creates a factual question as to whether welding is an essential component of Plaintiff's job, summary judgment is not appropriate on Plaintiff's ADA discrimination claim.

---

[8] The Fifth Circuit held in *Cannon* that the defendant's reasoning for rescinding Plaintiff's job offer created a genuine dispute of material fact because:

> If [the defendant] convinces a jury that [the plaintiff] cannot perform essential functions of the job because of the injury, then it has offered a lawful reason for its decision. But if the jury credits the evidence we have cited favoring [the plaintiff] and concludes he was disabled, yet still qualified to be a field engineer, then revoking [plaintiff's] job offer based on his physical impairment would have constituted the discrimination that the ADA forbids.

*Id.*

## II.  ADA Retaliation

Defendant next argues that Plaintiff's ADA retaliation claim should be dismissed because Plaintiff: (i) failed to exhaust his administrative remedies as to his retaliation claim; and (ii) cannot establish the third element of his *prima facie* case, *i.e.,* that there was a causal connection between the protected activity and the adverse employment action.[9]  [*Id.*].

### A. Exhaustion of Administrative Remedies

Before initiating suit for a violation of the ADA, plaintiffs must exhaust their administrative remedies by filing a charge with the EEOC.[10]  *Williams*, 717 F. App'x at 445.  "ADA … claims are properly raised in federal court only when they are within the scope of the … investigation which can reasonably be expected to grow out of the [administrative] charge of discrimination," and "[f]ailure to exhaust is grounds for dismissal." *Id.* (internal quotation marks omitted).

But although the Fifth Circuit "strictly construes the exhaustion requirement, it views administrative charges in the 'broadest reasonable sense.'" *Id., citing Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 467 (5th Cir. 1970). This is "[b]ecause administrative charges are rarely drawn by attorney[s]." *Id.*  So, a plaintiff is not required to "check a certain box or recite a specific incantation to exhaust" his administrative remedies. *Id.*  Simply put, "the scope of an EEOC charge should be

---

[9]  The Court notes that Plaintiff failed to address any of Defendant's arguments in his Opposition with respect to Plaintiff's ADA retaliation claim.  *See generally* [Doc 22].  In spite of this, the Court will nevertheless address the merits of Defendant's contentions.

[10]  Defendant does not contend that Plaintiff failed to exhaust his administrative remedies as to his ADA discrimination claim.  *See generally* [Doc. 17-1].

Page 12 of 19

liberally construed for litigation purposes…" *Parker v. State of La. Dep't of Educ. Special Sch. Dist.*, 323 F. App'x 321, 329 (5th Cir. 2009).

Here, Defendant asks this Court to narrowly and strictly construe Plaintiff's EEOC charge. *See* [Doc. 17-1, pp. 26–27]. Specifically, Defendant argues that Plaintiff's EEOC "charge states his discrimination claim is only based on 'Disability' and his particulars only complain about disability discrimination. There is no whiff of a retaliation claim." [*Id.*, p. 27].

In his EEOC charge, Plaintiff stated that he "believe[d] [he] was discriminated against based on his disability," and that he "discussed the possibility of accommodating [him] to work as a diesel mechanic."[11] [Doc. 17-2, p. 170]. Read liberally, Plaintiff's EEOC charge encompasses the contention that his termination flowed from his medical restrictions and discussion of possible accommodations. [*Id.*].

---

[11]     The entirety of the factual allegations contained in Plaintiff's EEOC charge are as follows:

> I began working with Waste Management on March 7, 2017 as a welder/technician.  I believe I was discriminated against based on my disability.  On April 25, 2022 I had an ICD Implant placed to deal with some cardiac health related problems.  Two weeks later, during a meeting with Regional Manager and Supervisor we discussed the possibility of accommodating me to work as a diesel mechanic.  Due to the fact that I would no longer be able to work as a welder due to the ICD Implant.  On July 7th I was cleared by my cardiologist to go back to work. Waste Management requested more detailed medical documentation.  The documentation was provided on July 21, 2022.  I was awaiting the results from the company doctor when I was terminated on August 4, 2022.  Termination letter stated there wasn[']t a position near your location available, however, I did tell the company that I was willing to relocate.  The company employs over 500 employees.  I believe I was discriminated against in violation of the Americans with Disabilities Act of 1990, as amended.

[Doc. 17-2, p. 170].

Because this Court refuses to "cut off [a party's rights] merely because he fails to articulate correctly the legal conclusion emanating from his factual allegations," this Court finds that Plaintiff successfully exhausted his administrative remedies as to his ADA retaliation claim. *Sanchez*, 431 F.2d at 462.

### B. *Prima Facie* Case

Defendant also seeks summary judgment on Plaintiff's ADA retaliation claim on the merits. Here, the parties only contest the third *prima facie* element of a retaliation claim – whether there was a causal connection between Plaintiff's protected activity and the adverse employment action.[12]

Without direct evidence of retaliation, a plaintiff's retaliation claim is governed by the *McDonnell Douglas* burden-shifting framework. *Feist v. La. Dept. of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). Under *McDonnell Douglas*, a plaintiff makes a *prima facie* case of retaliation by establishing that: (i) the plaintiff engaged in an activity protected by statute; (ii) his employer took an adverse employment action against him; and (iii) a causal connection exists between the protected activity and the adverse action. *McKinney v. Sheriffs Off. Rapides Par.*, 2021 WL 1083979, at *10 (W.D. La. Mar. 19, 2021), *citing Feist*, 730 F.3d at 454.

Relevant here, a *prima facie* retaliation claim requires that "a causal connection exists between the protected activity and the adverse [employment] action." *Aguillard v. Louisiana Coll.*, 824 F. App'x 248, 251 (5th Cir. 2020). Close

---

[12] Plaintiff's protected activity here was requesting that the Defendant no longer require him to weld to accommodate his heart condition. [Doc. 17-2, p. 20]. Requesting a reasonable accommodation for a disability can constitute protected activity. *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 317 (5th Cir. 2007). And the parties do not dispute that Plaintiff's termination constitutes an adverse employment action. [Doc. 22-7].

timing between an employee's protected activity and an adverse employment action can be sufficient evidence of causality so long as the temporal proximity is "very close." *Id.*; *see also Feist*, 730 F.3d at 454 ("While a four-month gap may be sufficient evidence of causation, a five-month gap is too long absent other evidence."). In fact, the Fifth Circuit has "repeatedly held [that] periods of a few months [are] sufficient to satisfy causation in a *prima facie* case." *January v. City of Huntsville*, 74 F.4th 646, 653 (5th Cir. 2023).

Here, Plaintiff can establish a *prima facie* case of causation based on temporal proximity alone. Defendant admits that Plaintiff requested an accommodation on July 6, 2022, which is the date the interactive process to accommodate Plaintiff allegedly began. [Doc. 17-1, p. 10]. Plaintiff was then terminated on August 4, 2022. [Doc. 22-7]. This timing creates a 29-day gap between Plaintiff's request for an accommodation and termination, which is well within the timeframe that the Fifth Circuit considers sufficient to establish causation. *See January*, 74 F.4th at 653. Accordingly, Plaintiff is able to establish a *prima facie* case of ADA retaliation.

### C. Defendant's Nonretaliatory Justification

Once the plaintiff carries his *prima facie* burden, the employer is presumed to have retaliated against the plaintiff. *McInnis*, 207 F.3d at 279–80. To rebut this presumption, the employer must simply "articulate a legitimate … nonretaliatory reason for its employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

The plaintiff must then show that the employer's articulated reason was pretextual by establishing that their protected activity was a "but-for" cause of the

employer's adverse employment action. *Saketkoo v. Administrators of Tulane Educ. Fund,* 31 F.4th 990, 1001–02 (5th Cir. 2022) ("An employee can establish pretext in the context of retaliation 'by showing that a discriminatory motive more likely motivated her employer's decision.'"). Notably, the standard for establishing a factual dispute as to pretext after an employer has articulated a non-retaliatory reason is higher than that for *prima facie* causation; temporal proximity alone is insufficient. *January*, 74 F.4th at 654.

  Defendant again argues that its reason for terminating Plaintiff was because there were no vacant positions available for which Plaintiff was qualified and that fit Plaintiff's restrictions due to his pacemaker. [Doc. 17-1, pp. 24–26]. Once more, Defendant's stated reason for terminating Plaintiff is premised upon the conclusion that welding is an essential function of the Container Technician position. In short, Defendant's alleged legitimate and non-discriminatory justification for terminating Plaintiff is inextricably linked to the nature of Plaintiff's physical impairment and the Container Technician position's essential job duties. So, if a jury were to find that Plaintiff is disabled, but that welding is not an essential function of his position, then Defendant's reasoning would "constitute the discrimination that the ADA forbids." *See Cannon*, 813 F.3d at 594. Consequently, Defendant's stated reason presents a genuine dispute of material fact for the same reasons discussed *supra* and as set forth in *Cannon*. Accordingly, summary judgment is not warranted for Plaintiff's ADA retaliation claim.

### III.  FMLA Retaliation

Finally, Plaintiff brings an FMLA retaliation claim premised on his employment termination, which Plaintiff alleges was due to his attempt to take FMLA-protected leave.  [Doc. 1, ¶¶ 60–61].  In its Motion, Defendant contends that Plaintiff's FMLA claim is time-barred, or alternatively, that Plaintiff cannot establish the *prima facie* elements of FMLA retaliation.  [Doc. 17-1, pp. 30–32].  Plaintiff fails to address Defendant's statute of limitations argument.  [Doc. 22].

The FMLA entitles eligible employees to twelve work weeks of leave during any twelve-month period because of a serious health condition.  29 U.S.C. § 2612(a)(1).  The FMLA provides that a covered employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any [FMLA leave] right." 29 U.S.C. § 2615(a).  The FMLA also "protects employees from retaliation or discrimination for exercising their rights under the FMLA." *Mauder v. Metro. Transit Auth. of Harris Cnty.*, 446 F.3d 574, 580 (5th Cir. 2006).

Here, the parties do not dispute that Defendant was subject to the FMLA or that Plaintiff was an FMLA covered employee.  *See generally* [Docs. 17, 22, 27].  The threshold question is whether Plaintiff's FMLA retaliation claim is time-barred; if it is, any alleged factual disputes are irrelevant.

The statute of limitations for an FMLA claim is two years, or three years if the alleged violation was willful.  29 U.S.C. § 2617(c); *Mozingo v. Oil States Energy, Inc.*, 661 F. App'x 828, 830 (5th Cir. 2016), *citing* 29 U.S.C. § 2617(c); *Coleman v. Carrington Mortg. Servs., LLC*, 2020 WL 4723174, at *7 (E.D. Tex. July 27, 2020)

(finding that plaintiff's FMLA claim, which was filed more than two years after the alleged violation occurred, was time-barred).

The latest allegedly retaliatory conduct that occurred was the termination of Plaintiff's employment on August 5, 2022, when Plaintiff received the termination letter. [Doc. 22-7]. As noted above, Plaintiff's lawsuit was filed on September 10, 2024. [Doc. 1]. This is more than two years after the last instance of the allegedly retaliatory conduct. Consequently, unless Plaintiff alleges that Defendant willfully retaliated against Plaintiff, Plaintiff's FMLA retaliation claim is time-barred.

In order "to establish a willful violation of the FMLA, a plaintiff must show that his employer 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute.'" *Mozingo v. Oil States Energy, Inc.*, 661 F. App'x 828, 830 (5th Cir. 2016), *quoting Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 393 (5th Cir. 2005). However, "[a] negligent violation is not a willful violation, and an unreasonable violation does not necessarily constitute a willful violation." *Id., quoting Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 248 (5th Cir. 2016).

But here, Plaintiff does not allege in his Complaint or his Opposition that Defendant willfully retaliated against him. *See generally* [Docs. 1, 22]. And the record is devoid of any factual allegations from Plaintiff that Defendant acted willfully. Accordingly, Plaintiff's FMLA retaliation claim is time-barred and summary judgment is warranted.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendant's MOTION FOR SUMMARY JUDGMENT [Doc. 17] is GRANTED IN PART and DENIED IN PART.

Accordingly,

IT IS HEREBY ORDERED that Defendant's request for summary judgment and dismissal of Plaintiff's claims for discrimination and retaliation under the ADA is DENIED.

IT IS FURTHER ORDERED that Defendant's request for summary judgment and dismissal of Plaintiff's claim for retaliation under the FMLA is GRANTED.

THUS, DONE AND SIGNED in Chambers on this 23rd day of January 2026.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE